UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CESIUMASTRO, INC.,

    *Plaintiff*,

v.

ERIK LUTHER and ANYSIGNAL, INC.,

    *Defendants*.

Case No. 1:24-cv-00314-RP

**PLAINTIFF CESIUMASTRO, INC.'S OPPOSED MOTION FOR AN ORDER
PERMITTING EXPEDITED DISCOVERY AND SETTING BRIEFING SCHEDULE**

CesiumAstro, Inc. moves under Fed. R. Civ. P. 26(d)(1) for an order permitting expedited discovery from Defendant Erik Luther and scheduling briefing on CesiumAstro's forthcoming Motion for Preliminary Injunction (the "PI Motion"). CesiumAstro is currently discussing agreed expedited discovery with Defendant AnySignal, Inc.[1]

## I. INTRODUCTION

From the moment Luther resigned as a CesiumAstro executive, he did his best to hide his misuse of company information and improper competition against his former employer. CesiumAstro needs expedited discovery to overcome Luther's attempts to delete evidence and cover his tracks so that it can file its PI Motion to stop Luther's unlawful acts.

During his employment, Luther had access to confidential, proprietary, and trade secret CesiumAstro materials, including related to confidential CesiumAstro investor information, compiled customer data, detailed bid and pricing information, and technical specifications about its software-defined radio ("SDR") products. When he gave his resignation notice in August 2023, Luther sought a waiver of his clear non-compete obligations, explicitly indicating his intentions to compete with CesiumAstro and its SDR products with an unnamed company. When CesiumAstro refused to waive its rights, Luther still departed—but CesiumAstro is now aware that when he did so, he began a pattern of conduct that violated his non-compete obligations, misappropriated company information, and attempted to wipe clean evidence of wrongdoing.

Days before resigning in August 2023, Luther ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ AnySignal, a new competitor to CesiumAstro in the SDR space. Upon resigning, he admits he reset his company iPad to factory settings, accessed many company files on his way out, and refused to disclose the extent of his involvement with AnySignal.

---

[1] CesiumAstro reserves the right to move for expedited discovery from AnySignal if an agreement is not reached between the parties.

Luther's obstructionism continued when CesiumAstro tried to remediate company information in his possession. Despite pre-existing obligations to return company information, Luther conditioned his compliance on extreme concessions—including demands that CesiumAstro release him from any liability. When CesiumAstro declined, Luther stalled for months. When Luther finally agreed to comply through a Forensic Inspection Protocol Agreement, Plassio Decl. Ex. D (the "Protocol"), he only feigned compliance. He failed to provide a required privilege log and shrouded documents by over-using "attorney eyes only" ("AEO") designations. When CesiumAstro identified numerous USB devices known to have been plugged into his company laptop, he claimed he was unable to provide most of them. Notwithstanding his obfuscation, CesiumAstro found hard evidence of his and AnySignal's wrongdoing, including ████████ ████████. And CesiumAstro has begun seeing evidence of AnySignal's wrongful use of its trade secrets—the brand-new company has brought similar SDR products quickly to market, contacted a little-known CesiumAstro investor, and beat CesiumAstro's confidential bid for at least one project. This evidence and Luther's obstructions left CesiumAstro no choice but to sue.

Luther's behavior since CesiumAstro sued has been more of the same. Right after filing, CesiumAstro reached out to meet and confer on narrow expedited discovery. To avoid that discovery and what it would show, two days later Luther filed an emergency motion for sanctions and a stay, including because, he asserts, "discovery is decidedly unnecessary." ECF No. 10 ("Luther's Motion") at 11.

CesiumAstro agrees with the styling of Luther's Motion as an emergency one. This issue requires prompt attention. But contrary to Luther's position, discovery is decidedly necessary. The evidence recently uncovered—not because of Luther's cooperation but in spite of his filibustering—shows a risk of competitive harm to CesiumAstro if Luther and AnySignal continue in their misconduct.

2

## II.   FACTUAL BACKGROUND

### A.   Luther's employment at CesiumAstro and plot with AnySignal.

CesiumAstro, a leader in communications solutions for the aerospace industry, employed Luther as a sales and strategy executive. ECF No. 1 (the "Complaint"), ¶ 2. Luther admits that, in that role, he accessed confidential, proprietary, and trade secret CesiumAstro materials. *Id*. ¶¶ 2, 34–38; ECF No. 9 at 6, ¶ 34 (the "Verified Answer"). Luther further admits that he stored company information on his iPhone. ECF No. 10 at 13 (the "Luther Declaration"), ¶¶ 10, 13.

CesiumAstro granted Luther access to its information under a Proprietary Information and Inventions Agreement with Luther (the "PIIA"). Compl. ¶ 23. Under the PIIA, Luther agreed to protect and never disclose or misuse confidential company information, to return company information upon termination of his employment, and not compete against the company for one year after that date. *Id*. ¶¶ 23–33.

### B.   Luther ███████████████████████████████, resigns days later, and attempts to cover his tracks.

Luther ████████████████████ on Friday, August 18, 2023. Plassio Decl. Exs. F, G. In response to this lawsuit, Luther admits he had written communications with AnySignal and a meeting with its CEO, John Malsbury (a former colleague of Luther), in August 2023. Luther Decl. ¶ 15. Luther admits that during the same time—indeed, the same day ████████ ████████—he accessed numerous CesiumAstro files, claiming it was to "quickly complete outstanding tasks." Luther Decl. ¶ 6. He does not specify the nature of his work. *Id*.

The following Monday, August 21, 2023, Luther resigned. *Id*. His resignation letter asked for release from his PIIA non-compete obligations based on his competitive "plan to stay involved in the industry." Compl. ¶ 42. Luther admits that he made this request, which CesiumAstro rejected. *Id*.; Luther Decl. ¶ 8. But he contradicts the very nature of that request by suggesting

3

that, even just days after █████████████████████████████, he "did not seriously consider going to work for a competitor." *Id*.  And on his final day at the company, he took several actions to misappropriate CesiumAstro's materials, violate its contractual rights, and spoliate evidence:

- Luther admits he reset to factory settings a company iPad before returning it.  *Id*. ¶ 7.  He claims he did so only to disassociate his Apple ID from the device.  *Id*.  But the facts prove otherwise, as there is no need to factory reset an iPad to accomplish this simple task.  *See* Plassio Decl. Ex. H (Apple support page indicating that, when signing out of an Apple ID on a device, local data on the device "will be removed from your device *unless you choose to keep a copy of that data when prompted*" (emphasis added) and that a user has the opportunity to "[t]urn on the data that you want to keep a copy of on your device").

- Luther admits he left his company laptop at home the day he resigned.  Luther Decl. ¶ 7.  Luther made this convenient mistake despite suspecting that he would be "walked out" of the office the day of his resignation.  Compl. ¶ 44.

### C.   Luther enters into the Protocol but violates its spirit and its terms.

When CesiumAstro demanded that Luther simply return all company property in his possession, Luther attempted to condition his agreement on, among other things, a release of liability for any wrongdoing.  Compl. ¶ 62.  After CesiumAstro refused, Luther did not quickly agree to a process of remediation; he instead stalled.  *Id*. ¶¶ 62–63.  After months of back-and-forth, Luther agreed to a limited Protocol, allowing only narrow and pre-screened documents to be reviewed and remediated.  *Id*.  In it, Luther hid behind underinclusive search terms that *still* managed to uncover his August 2023 communications with ████████████████████.  Plassio Decl. Exs. F, G.  In opposing this action, Luther testifies that "[a]ll of the emails I exchanged with AnySignal have been turned over" under the Protocol.  Luther Decl. ¶ 15.  Again, the facts prove otherwise.  The last of his communications with AnySignal that he provided to CesiumAstro, pursuant to the Protocol, ███████████████.  Plassio Decl. ¶ 10 & Exs. F, G.  But then Luther admits he had communications with AnySignal on at least August 20, 2023—████████████████████.  *Id.*; Luther Decl. ¶ 15.

4

Luther's conduct in administering the Protocol continued his pattern of subterfuge. The Protocol permits documents to be labeled AEO but mandates a good-faith discussion of requests to downgrade those designations. Plassio Decl. Ex. D at 4–5. Luther proceeded to over-designate and then refused to downgrade *any* AEO designations, preventing CesiumAstro's counsel from discussing the import of these documents with its client. Compl. ¶ 64 (referencing Ex. D-8 to Luther's Motion, ECF No. 10 at 97); Plassio Decl. ¶ 11. Luther has also failed to provide a privilege log as required by the Protocol, suggesting there is a tranche of documents Luther is withholding on baseless (and unlogged) claims of privilege. Luther's Motion at 8.

Further, the Protocol is more limited than the tailored (but necessary) discovery in this action will be. Its limited search terms were aimed at remediating documents, not discovering evidence. For example, it did not include "AnySignal" as a search term. Plassio Decl. Ex. D at 3–4. Nor does the Protocol include an image of Luther's personal phone, even though Luther now testifies that he stored CesiumAstro information on this device. *Id*. at 1; Luther Decl. ¶¶ 10, 13.

### D.   Luther's attempts to shut down discovery—formal or otherwise—continue after suit is filed.

The day after filing suit, CesiumAstro sent Luther a letter asking to meet and confer on the targeted discovery at issue here. Plassio Decl. Ex. E (March 26, 2024 Letter from Cope to Brodrick). Counsel conferred the next day. Plassio Decl. ¶ 8. That evening, CesiumAstro asked for a response to its proposal by March 29, 2024. *Id*. Luther's counsel did not respond, *id*., and instead filed an "emergency" motion for sanctions and for a stay. ECF No. 10 (Luther's Motion).

Meanwhile, Luther tried to rewrite the facts. The Complaint, filed on March 25, 2024, noted that despite claiming to be employed by a small company called Saleae, Inc., Luther was not listed on Saleae's website. Compl. ¶ 40. This was true as of March 28, 2024. Plassio Decl. Ex I (Saelae website as of March 28, 2024). Then, Luther scurried to cover his tracks, appearing on

5

Saleae's site by March 29, 2024, but raising questions about his role with AnySignal and Saleae before then. Plassio Ex. J (Saleae website as of March 29, 2024).

### III. ARGUMENT

Luther's obstructive, unlawful actions necessitate expedited discovery. CesiumAstro seeks a tailored set of five RFPs and six interrogatories. Copies of the written discovery CesiumAstro seeks are attached. Plassio Decl. Exs. A, B. And because much of the key evidence to the PI Motion would not be uncovered through written discovery—*e.g.*, oral discussions between Luther and AnySignal, and Luther's spoliation of evidence—CesiumAstro also seeks permission to depose Luther for a focused, half-day session. Plassio Decl. Ex. C.

Federal Rules of Civil Procedure 34(b) and 26(d) allow expedited discovery. *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 501 (5th Cir. 1982); *Quilling v. Funding Resource Grp.*, 227 F.3d 221, 233 (5th Cir. 2000). Courts permit expedited discovery upon a showing of good cause. *Accruent, LLC v. Short*, 2017 WL 8811606, at *1 (W.D. Tex. Nov. 8, 2017) (Pitman, J.); *see also Intel Corp. v. Rais*, 2019 WL 164958, at *7 (W.D. Tex. Jan. 10, 2019) (Pitman, J.). Good cause exists if the need for expedited discovery "in consideration of the administration of justice" outweighs any prejudice to the respondent. *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011). "In determining whether good cause exists, courts often consider '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made.'" *Accruent, LLC*, WL 8811606, at *1 (quoting *St. Louis Grp.*, 275 F.R.D. at 234 n.4). These factors support CesiumAstro's proposed expedited discovery.

#### A. Factor 1: CesiumAstro's PI Motion will rely on the discovery sought.

"Expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief

because of the expedited nature of injunctive proceedings." *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996). This factor still supports granting this motion because CesiumAstro intends to file its PI Motion immediately after expedited discovery concludes. Thus, while no such motion is pending yet, CesiumAstro requests expedited discovery so it can obtain and provide to the Court a more complete record of the targeted information at issue in its forthcoming PI Motion.

This discovery is necessary because of Luther's repeated refusal to voluntarily provide this information. Luther admits that he has provided no privilege log under the Protocol. Luther's Motion at 8. He admits that he has refused to address requests to remove the "AEO" designation from documents provided under the Protocol. *Id*. He admits that he has wiped his company iPad. Verified Answer ¶ 45. And he admits that USB devices that were plugged in to his work computer are missing. Luther Decl. ¶ 14.

Yet despite Luther's roadblocks, CesiumAstro has *still* uncovered evidence supporting its claims, as detailed above. With this information in hand and a more complete picture of Luther's and AnySignal's wrongdoing emerging, CesiumAstro must act quickly to complete that picture through expedited discovery. This expediency is especially warranted since Luther continues to use and potentially overwrite data on his personal devices, such as his iPhone, which has not been imaged. Luther Decl. ¶ 10, 13. Luther's Motion literally admits this matter is an "emergency" in attempting to cut off this expedited discovery by shutting down discovery altogether.

**B.      Factor 2: CesiumAstro's discovery requests are narrowly tailored.**

CesiumAstro has narrowly tailored its requests to seek only evidence that is at issue in CesiumAstro's forthcoming PI Motion. CesiumAstro has further limited its requests to seek only evidence that CesiumAstro expects to find in Luther's possession based on the already-existing evidence of wrongdoing that CesiumAstro has uncovered. The discovery sought covers the

7

following two core topics on which CesiumAstro will move for preliminary injunction: (1) Luther's violation of his non-compete obligations through his interactions with a competitor, and (2) Luther unlawful possession, disclosure, and use of CesiumAstro's confidential information and trade secrets. This factor favors a finding of good cause.

> C. **Factor 3: Facts central to the PI Motion are exclusively within Luther's control, and CesiumAstro has real concerns about destruction of evidence.**

Allowing a party to gather evidence to support a preliminary injunction in trade secret cases—as CesiumAstro seeks to do here—commonly justifies expedited discovery. *See*, *e.g.*, *Legacy of Life, Inc. v. Am. Donor Servs., Inc.*, 2006 WL 8435983, at *3 (W.D. Tex. Oct. 10, 2006); *PSS World Med. Inc. v. Fairchild*, 2011 WL 13217506, at *2 (E.D. Tex. Feb. 3, 2011). The court in *Legacy of Life*, for example, allowed expedited discovery "for the legitimate purpose of preparing for a hearing on [the plaintiff's] application for preliminary injunction and to prevent any further misappropriation of its trade secrets." 2006 WL 8435983, at *3. Likewise, in *PSS World Medical*, the court granted expedited discovery needed to prepare for a hearing on whether the responding party should be preliminarily enjoined from disclosing the movant's confidential information. 2011 WL 13217506, at *2.

Courts are especially inclined to permit expedited discovery where, as here, the evidence sought (1) is within the responding party's exclusive control or (2) the requesting party has a reasonable basis to fear that relevant evidence will be destroyed before it can be obtained under a standard timeline. *OrthoAccel Techs.*, 2016 WL 3747222, at *5. Both conditions are present here.

First, key evidence of Luther's handling of confidential information on personal devices and communications with AnySignal is in Defendants' sole control. As three examples:

- CesiumAstro is currently aware of four sets of devices that contain evidence of Luther's unlawful acts. CesiumAstro controls only one set—Luther's company laptop and desktop. The others are in Luther's possession and only Luther can answer questions about them: (1) Luther admits he wiped his company iPad but he gives no indication

8

of what information he spoliated, Luther Decl. ¶ 7; (2) Luther has not provided his personal iPhone for imaging, even though he admits he sent CesiumAstro's proprietary information to it, *id*. ¶¶ 10, 13; (3) a number of USB drives were plugged in to Luther's CesiumAstro laptop, and some are missing, *id*. ¶ 14.

- While Luther provided a narrow, attorney-crafted declaration of certain events, *see* Luther Declaration (ECF No. 10 at 13–20), he refuses to sit for a deposition. A deposition is critical here, not only to test Luther's self-serving assertions (which, as demonstrated above, are often contradicted by the facts), but also because the only evidence of undocumented conversations and actions is oral testimony.

- Luther ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ August 20, 2023 communications with AnySignal, despite testifying that he has provided *all* emails between him and AnySignal. Luther Decl. ¶ 15; Plassio Decl. ¶ 10. CesiumAstro is entitled to these communications and testimony about them, especially in light of their critical timing between the day Luther ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and his resignation from CesiumAstro on August 21, 2023.

Second, CesiumAstro has a reasonable basis to fear the destruction of evidence because some has already been destroyed. Luther admits that he reset to factory settings a company iPad before returning it, spoliating evidence, Luther Decl. ¶ 7, and his proffered justification of removing his Apple ID is false because an Apple ID can be removed from the device without deleting data on the device. *See* Plassio Decl. Ex. H. Luther also admits that numerous USB drives were plugged in to his CesiumAstro laptop, but some now are missing. Luther Decl. ¶ 14.

**D.      Factor 4: Expedited discovery will not unfairly burden Luther.**

CesiumAstro has minimized the burden to Luther by tailoring its discovery requests to seek only the documents and information most essential to its PI Motion. All the information CesiumAstro seeks is within Luther's control, requiring compliance from a single "custodian." It will require a straightforward production of predominantly electronic documents that were created, at most, in the last year or two and, in many instances, the last several months. The deposition of Luther will be limited to a half-day on the record. Nor will discovery regarding the few devices of Luther's that have not yet been imaged impose a burden. It would take less than one day and cost between $1,000 and $2,000 to image Luther's iPhone, for example. Plassio Decl. 16.

9

    **E.**    **Factor 5: The timing of CesiumAstro's requested discovery is consistent with a finding of good cause.**

CesiumAstro seeks an order providing for discovery and briefing on its PI Motion according to the following schedule:

- Seven days from this Court's Order, CesiumAstro may serve on Luther five RFPs and six interrogatories.

- 14 days from this Court's Order, Luther shall serve any objections to any RFPs and interrogatories.

- 21 days from this Court's Order, Luther shall serve initial disclosures pursuant to Fed. R. Civ. P. 26.

- 30 days from this Court's Order, Luther shall (a) serve written responses and objections to any interrogatories, and (b) complete his production of documents responsive to any RFPs.

- Within 7 days of his production, Luther shall serve a privilege log.

- Within 14 days of his production, CesiumAstro may depose Luther for no more than five hours on the record.

- 14 days after the completion of any and all depositions contemplated by this Motion, CesiumAstro shall file any motion for preliminary injunction with supporting declarations. The briefing schedule for this motion shall be governed by Local Civil Rule 7-1.

To seek preliminary injunctive relief, CesiumAstro cannot wait for discovery to be performed in the ordinary course, and instead, must seek and obtain this narrow core of information in an expedited manner to then quickly brief its injunctive requests to the Court. The timing of this proposed schedule is reasonable and balances the slight burden of this expedited discovery with CesiumAstro's need to move swiftly to protect its intellectual property and contractual rights through the PI Motion.

**IV.   CONCLUSION**

The Court should grant CesiumAstro's Motion for an Order Permitting Expedited Discovery and Setting Briefing Schedule.

Dated: April 8, 2024

Respectfully submitted,

O'MELVENY & MYERS LLP

*/s/ Kristin C. Cope*
David S. Almeling (*pro hac vice*)
dalmeling@omm.com
Two Embarcadero Center
28th Floor
San Francisco, California 94111
Telephone: +1 415 984 8700
Facsimile: +1 415 984 8701

Kristin C. Cope *(pro hac vice)*
kcope@omm.com
Patrick V. Plassio
Texas Bar No. 24102362
pplassio@omm.com
2801 North Harwood Street, Suite 1600
Dallas, Texas 75201
Telephone: +1 972 360 1900
Facsimile: +1 972 360 1901

***Attorneys for Plaintiff CesiumAstro, Inc.***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on April 8, 2024. As Defendant AnySignal, Inc. has not yet been served or appeared, Plaintiff CesiumAstro, Inc. will simultaneously serve a copy of this motion on Defendant AnySignal, Inc. via its registered agent.

                                               */s/ Patrick V. Plassio*
                                               Patrick V. Plassio

**CERTIFICATE OF COMPLIANCE**

CesiumAstro's counsel has complied with the substantive meet-and-confer requirement in the Local Rules with respect to this motion with respect to Luther. Counsel for CesiumAstro conferred by phone on March 27, 2024 and by email later that day. Counsel for Luther indicated on the March 27, 2024 phone call that he would revert to counsel for CesiumAstro on his opposition to this motion. Counsel for CesiumAstro followed up by email that day with a proposal regarding certain terms relating to this motion, indicating that Luther's failure to respond to this proposal by the close of business on March 29, 2024 would indicate an opposition to this motion. Luther failed to respond and instead filed that day his Emergency Request for Judicial Conference, Motion to Stay, and Motion for Rule 11 Sanctions. ECF No. 10. Luther has since confirmed via email that he opposes this Motion.

                                               */s/ Patrick V. Plassio*
                                               Patrick V. Plassio