UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CESIUMASTRO, INC.,

   *Plaintiff*,

v.

ERIK LUTHER and ANYSIGNAL, INC.,

   *Defendants*.

Case No. 1:24-cv-00314-RP

**PLAINTIFF CESIUMASTRO, INC.'S RESPONSE IN OPPOSITION TO
DEFENDANT ANYSIGNAL, INC.'S MOTION FOR A PROTECTIVE ORDER**

AnySignal's Motion for Protective Order omits what is actually at issue. It seeks to hide critical discovery that Defendant Luther agreed to provide: *days* before he left CesiumAstro, Luther exchanged almost 400 texts with John Malsbury, CEO of a fledgling CesiumAstro competitor: AnySignal. AnySignal's heavily redacted copies of those texts reveal negotiations about CesiumAstro's exact allegations: ███████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████. But AnySignal redacted over 35% of these texts. AnySignal's Motion is not about its own production obligations. It instead seeks to stop *Luther* from producing full copies of these texts, even though he agreed to do so in his own carefully-brokered discovery agreement.

AnySignal's Motion ignores core allegations; misreads a Court order; seeks to nullify CesiumAstro and Luther's careful agreement regarding discovery; and violates its own accord with CesiumAstro. It does this all having not properly conferred on its Motion before filing.

## I.  BACKGROUND

CesiumAstro alleges that former executive Luther, in concert with AnySignal, misappropriated trade secrets and breached the non-compete obligations in his Proprietary Information and Inventions Agreement ("PIIA") with CesiumAstro. At an initial hearing, Luther's counsel argued that "these allegations are completely invented out of thin air," then AnySignal feigned ignorance as to why it is part of this case: "We're kind of strangers to this action . . . we never hired Mr. Luther, never paid Mr. Luther, never got any information." Declaration of Patrick V. Plassio ("Plassio Decl.") Ex. A, 10:4–5, 14:18. The texts at issue now show otherwise.

**A.    The Parties entered Agreements on Expedited Discovery**

This Court directed CesiumAstro and Luther to confer to "work out a reasonable schedule for some expedited discovery." *Id*. 5:3–5. AnySignal suggested it need not be involved in that

meet-and-confer: "[I]t sounds like the actual parties of the dispute"—CesiumAstro and Luther—"should have tea, get together, watch the sunset, figure out, you know what makes sense for them, their business and their professional life." *Id*. 11:13–17.  The Court concluded that CesiumAstro and Luther should negotiate on a scope of expedited discovery, and that CesiumAstro should have an "independent but substantive conference" with AnySignal as well.

> **1. Luther agrees to expedited discovery, including by acknowledging that the documents now at issue are relevant and should be produced.**

CesiumAstro and Luther met on April 19, as ordered.  Plassio Decl. ¶ 3.  They discussed the requests proposed in CesiumAstro's expedited discovery motion.  *Id*.  Two such RFPs sought Luther's communications with, regarding, or referencing AnySignal.  ECF No. 14-3 at RFP Nos. 1, 2.  Luther's counsel said that, if these RFPs were limited in time (*e.g.*, to after when Luther signed his PIIA), Luther would produce these communications.  *Id*.  In part based on these assurances of full production, CesiumAstro and Luther reached agreement on a reasonable scope of relevant expedited discovery between them, which included CesiumAstro withdrawing its then-pending motion.  *See, e.g.*, ECF No. 20 ("Luther Discovery Agreement").

> **2. AnySignal also agrees to expedited discovery, with the court issuing an order governing the documents that AnySignal must produce as part of it.**

CesiumAstro and AnySignal then discussed expedited discovery from AnySignal.  They reached an agreement, under which CesiumAstro accepted narrower discovery from AnySignal because it knew Luther would produce broader communications.  CesiumAstro and AnySignal memorialized their agreement on expedited discovery in a separate Joint Status Report, in which CesiumAstro agreed to tee up one disputed issue to the Court regarding the documents that AnySignal would produce, again knowing that Luther would be producing certain sets separately. ECF No. ¶ 10 ("*AnySignal will produce* all responsive documents . . . *in the following three categories, the final scope of which will be determined* . . . by the Court's resolution.") (emphasis

2

added). The Court sided with AnySignal's proposal on May 1, 2024, ordering that "*AnySignal shall produce*" documents in three delineated categories. ECF No. 24 at 1–2 (emphasis added). The Joint Status Report between AnySignal and CesiumAstro, along with the Court's May 1, 2024 Order, set the scope of expedited discovery between those two parties (the "AnySignal Discovery Agreement").

The plain language of the May 1 order applies only to what AnySignal must produce: what CesiumAstro would receive *from* AnySignal. Contrary to AnySignal's Motion, it does not limit what CesiumAstro would receive *about* AnySignal; it says nothing about what Luther may or may not produce, which is controlled by the Luther Discovery Agreement.

**B.    AnySignal, without asserting any privilege, seeks to unilaterally restrict Luther from producing relevant, discoverable documents he has already said he would produce.**

CesiumAstro's expedited RFPs to Luther for his communications with AnySignal contained the time limitation that Luther requested at the parties' April 19 meeting. ECF No. 34-23 at RFP Nos. 1, 2. Again, CesiumAstro entered into agreements regarding expedited discovery with both defendants in part because Luther committed to producing documents responsive to these revised requests. That did not happen. Instead, after these agreements were entered, AnySignal asserted that it could limit not only its own production, but unilaterally Luther's as well.

Specifically, Luther and AnySignal's CEO, John Malsbury, exchanged hundreds of text messages in the twelve days before Luther resigned. AnySignal indicated it would not produce them and would also forbid Luther from doing so as well, so Luther's RFP responses were made "subject to the court's order regarding discovery [and] AnySignal's objections." *Id*.

Luther's counsel clarified that Luther has no objection to producing these texts (he said he would not even oppose a motion to compel); he was just parroting AnySignal's objection to Luther's production of them. Plassio Decl. ¶ 4. AnySignal then clarified that it *did not* assert any

3

trade secret or other privilege over documents that Luther was ready to produce. Plassio Decl. ¶ 5. Instead, AnySignal's sole basis for asserting that it could limit *Luther's* production was the Court's May 1 order. Specifically, AnySignal asserted that the Court's May 1 order describing the documents that "*AnySignal shall* produce," ECF No. 24 (emphasis added), somehow restricted what *Luther* could *not* produce—when he had already agreed to do so. Plassio Decl. ¶ 5. Nevertheless, Luther reaffirmed his willingness to produce these texts—which he conceded were relevant—but expressed his inability to do so based on AnySignal's position. Plassio Decl. ¶ 6. AnySignal was forcing Luther to entirely withhold a broad set of relevant, responsive information.

C. **CesiumAstro and AnySignal reach an agreement to forestall any motion practice, which AnySignal flouts by filing this Motion anyway.**

CesiumAstro again proposed to AnySignal a way to receive this important discovery but avoid motion practice: "[I]n an effort to avoid court intervention, AnySignal would provide narrow redactions to Luther's counsel—redactions at the word or phrase level, allowing the substance of the conversation to be identified without revealing the alleged confidential information—and in exchange . . . [CesiumAstro] would forego moving to compel with respect to these messages at least until [it is] able to assess the redacted versions and assess the subject matter of these produced conversations as they relate to our agreed discovery requests and claims." Ex. B[1] at 4. CesiumAstro offered to extend Luther's deadline for producing these texts so that he could align with AnySignal's proposed redactions. *Id.* AnySignal agreed. *Id.* at 1.

But AnySignal did not abide by what the parties discussed—providing narrow redactions that would allow CesiumAstro to assess the content of the texts and enable the parties to discuss before resorting to motion practice. Instead, on the (extended) deadline for producing these texts,

---

[1] Citations to exhibits herein refer to exhibits to the Plassio Decl.

4

AnySignal: informed CesiumAstro that it would be seeking a protective order; ignored CesiumAstro's requests for clarifying information and to confer; filed its premature Motion; and produced the texts with heavy redactions, hiding full pages of communications from view. *See* ECF No. 33-1 ¶ 25 (summarizing the parties' meet and confer efforts by suggesting that AnySignal's counsel said AnySignal "may move" for a protective order); Ex. C (emails with AnySignal's counsel detailing deficiencies in AnySignal's efforts to meet and confer on this Motion); *e.g.*, Ex. D (example of redactions, blacking out full messages and pages).

Meanwhile, AnySignal's redactions raise more questions than answers. As one example among others detailed below, *see infra* Part IV.B, Luther ███████████████████████████ ███████████████████████████████ followed by 17 redacted texts (nine of which Luther sent, presumably describing ███████). Ex. E at 33–34. Even the few visible messages prove CesiumAstro's need for the full discovery Luther has agreed to produce. They show Malsbury and Luther ███████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████. The texts visible through AnySignal's hand-picked, self-serving redactions call into question Luther's and AnySignal's posturing that CesiumAstro's allegations are "invented out of thin air" and that AnySignal "never got any information" from Luther. Ex. A, 10:4–5, 14:18. CesiumAstro is entitled to explore in expedited discovery ███████████████████████████████████████, and for what purpose.

**D.     AnySignal misplaces focus on the identities of "Customer A" and "Investor C," ignoring the broader allegations in the Complaint, and criticizing Confidentiality designations without abiding by the Court's Confidentiality and Protective Order.**

AnySignal's Motion ignores all of that. It insists none of the suspicious messages between the two defendants are relevant, by reducing CesiumAstro's trade secret allegations to one investor ("Investor C") and one customer ("Customer A")—pseudonymously referenced in the Complaint

5

to protect facts relating to them. ECF No. 1 ¶¶ 53, 57. But the broader allegations of CesiumAstro's Complaint, which use these entities as examples and allege misappropriation of CesiumAstro's strategy, pricing, customer intel, and technical product information as well, belie this reductionism. ECF No. 1 ¶ 16. The case does not, as AnySignal would like, "depend on allegations [about obtaining] 'secret' identities of" these two entities, or assert that "specific documents [] are the [only] trade secrets" at issue. Motion at 3.

AnySignal has not conferred on any challenge to the "Confidential" designation of these identities. The first CesiumAstro heard of any intention to make such a challenge was on the morning when AnySignal filed its Motion. *See* Plassio Decl. ¶ 12. For such a challenge, the Court's Confidentiality and Protective Order governs—the parties must first meet and confer, and then AnySignal must notify CesiumAstro of its challenge in writing. ECF No. 26 ¶ 11(a). AnySignal has done none of this. *See id.* It is unclear how, as AnySignal suggests, "[k]eeping this information (mis)classified is hamstringing AnySignal's defense," Motion at 3; CesiumAstro long ago alleviated AnySignal's only stated concern by agreeing *a month ago* to treat these identities as "Confidential"—such that AnySignal personnel could know them—*for that very purpose*. Ex. F.

AnySignal has not begun the process for challenging this Confidentiality designation, and does not seek that relief in its Motion. ECF No. 33-24. As a result, CesiumAstro focuses on the issue at hand—whether AnySignal is entitled to a protective order prohibiting Luther from producing relevant, responsive documents he already agreed to produce.

### III.  LEGAL STANDARD

A court may enter a protective order only "for good cause shown." Fed. R. Civ. P. 26(c). Good cause demands that the party seeking the protective order shows "the necessity of its issuance, by making a particular and specific demonstration of fact as distinguished from

stereotyped and conclusory statements." *Zamora v. GC Servs.*, LP, EP-15-CV-00048-DCG, 2017 WL 1861843, at *2 (W.D. Tex. Feb. 17, 2017) (internal quotations omitted) (citing *In re Terra Int'l Inc.*, 134 F.3d 302, 306 (5th Cir. 1998)). Courts evaluating whether good cause exists balance the moving party's showing of prejudice or burden against the potential relevance of information sought." *Mac v. Elk Elec., Inc.*, 1:19-CV-1230-RP, 2021 WL 2879286, at *1 (W.D. Tex. Feb. 2, 2021); *Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016).

## IV.  ARGUMENT

AnySignal has failed to show any prejudice that would outweigh the relevance of the discovery sought. The Motion should be denied for three reasons. First, the Court's May 1 order does not say what AnySignal would have it say. Second, even the few texts between Luther and Malsbury that peek through AnySignal's redactions demonstrate these texts' high probative value to CesiumAstro's claims. Third, AnySignal does not explain what confidential information is at issue, how its production would be harmful, or why an appropriate designation under the Court's existing Confidentiality and Protective Order could not remedy any unarticulated concerns.

**A.    The plain language of the Court's May 1 Order—AnySignal's only purported basis for the relief sought—does not say what AnySignal reads it to say.**

AnySignal's Motion relies only on the Court's May 1 order regarding expedited discovery *from AnySignal*. AnySignal describes it as a "rul[ing] on the scope of *discovery available into AnySignal*." Motion at 4 (emphasis added). As is plain on the order's face and from the parties' request for it, AnySignal's reading is wrong. The order describes what "AnySignal *shall produce*" in expedited discovery under the AnySignal Discovery Agreement. ECF No. 24 at 1–2. The Court did not rule on the scope of "discovery available into AnySignal," as AnySignal says.

AnySignal then misconstrues the Court's order by removing it from the expedited discovery context. AnySignal and CesiumAstro teed up, and the Court ruled on, the question of

which documents AnySignal would produce *in expedited discovery*. *Id*. at 1. AnySignal's Motion goes much further, seeking to restrict *all* discovery in *any* phase of the *entire* action from *any* party. ECF No. 33-24 (AnySignal's Proposed Order). Again, the Court's May 1 order is not so broad.

**B.     Even AnySignal's *redacted* communications with Luther, in the days leading up to his resignation from CesiumAstro, demonstrate the need for full discovery from Luther.**

AnySignal's Motion narrows the Complaint to only Luther's alleged disclosure—in the context of being formally hired by AnySignal—of trade secrets relating to Customer A and Investor C. Motion at 1. AnySignal disregards the many other trade secrets that CesiumAstro asserts, including technical information, strategy, and the identities, contacts, and preferences and development information for investors and customers (to which Luther had access and of which Customer A and Investor C are mere examples). ECF No. 1 ¶ 16. AnySignal ignores that Luther may have disclosed these trade secrets—and AnySignal could have misappropriated them—without AnySignal ever hiring Luther. *Id*. at First and Second Causes of Action. AnySignal also reads out from the Complaint CesiumAstro's claims for breach of Luther's non-compete and AnySignal's tortious interference with that non-compete. *Id*. at Third and Fifth Causes of Action.

These live claims demonstrate the alleged misconduct that would need to be preliminarily enjoined and the topics on which CesiumAstro needs expedited discovery. Even AnySignal's curated set of the redacted texts at issue reveals the following with respect to this misconduct:

- On August 9, 2023 (eight days before unofficially resigning from CesiumAstro), Luther texted Malsbury to ▇▇▇▇▇▇▇▇ Ex. E at 33. Luther said it ▇▇▇▇▇▇▇▇ *Id*. Luther added: ▇▇▇▇▇▇▇▇ *Id*. Seventeen redacted texts (nine sent by Luther) follow. *Id*. at 33–34.
- On August 11, 2023, Luther texted Malsbury: ▇▇▇▇▇▇▇▇ Ex. D at 46. Thirty-one redacted texts (sixteen sent by Luther) follow. Ex. D at 46–47.
- On August 12, 2023, Luther sent Malsbury ▇▇▇▇▇▇▇▇. Ex. G at 16, Ex. H at 21. The two ▇▇▇▇▇▇▇▇. Ex. G at 16–18. An unknown amount of redacted texts follow, before Luther and

Malsbury ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 18–19.

- On August 18, 2023, Luther texts Malsbury: ▮▮▮▮▮▮▮▮ Ex. I at 9. ▮▮▮▮▮▮▮▮. Ex. J (▮▮▮▮▮▮▮▮); Ex. K ▮▮▮▮▮▮▮▮.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- On August 20, 2023, Luther and Malsbury exchange 37 redacted texts before Luther writes: ▮▮▮▮▮▮▮▮ Ex. L at 24–27. Malsbury suggests, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 27.

- Luther and Malsbury texted again on August 21, 2023, with Luther suggesting he was "on ice for 12 months," presumably under the PIIA. Ex. M at 43. These texts occurred on the day Luther gave official notice of his resignation at CesiumAstro. ECF No. 9 ¶ 42 (Luther's Verified Answer). And they contradict Luther's sworn testimony in two other places, where he claims to have had no contact with AnySignal after August 20, 2023. ECF No. 10 ¶ 15 (Declaration of Erik Luther); Ex. N at Interrogatory Nos. 4, 5.

These texts are central to CesiumAstro's claims. And what lies beneath AnySignal's redactions would be highly probative of CesiumAstro's claim for a preliminary injunction. For example, and regardless of whether AnySignal hired Luther, it is unclear what CesiumAstro information Malsbury may have sought or Luther may have disclosed, including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. D at 46, or ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Ex. E at 33. If granted, AnySignal's Motion would shield the above-listed communications—and, more important, the messages shrouded in AnySignal's redactions. As the standard for obtaining a protective order requires a balancing of the parties' needs, CesiumAstro's need for these probative, unredacted materials from Luther compels denial of AnySignal's Motion.

C.   **AnySignal's confidential information can be protected by an Attorney's Eyes Only designation under the Court's Confidentiality and Protective Order.**

The other half of the balancing demanded on a request for a protective order—AnySignal's alleged hardship—also justifies denying the Motion. Initially, AnySignal does not and cannot

9

claim burden as a grounds for its requested protective order, since the Motion would only limit Luther's production. Further, AnySignal cannot claim a confidentiality interest over redacted material ███████████████████████████████████████████ ██████████████ Ex. K ██████████. More broadly, AnySignal's confidentiality concerns are misplaced. The Court, at all parties' joint request, entered a standard Confidentiality and Protective Order. ECF No. 26. It allows the designation of material on an Attorney's Eyes Only basis, so no personnel at CesiumAstro can access it. *Id*. ¶ 2(a). This protection is robust. AnySignal does not argue or explain how it would be insufficient. *See, e.g.*, *Fifield v. Schindler Enters., Inc.*, SA-14-CA-574-FB, 2015 WL 11661758, at *4 (W.D. Tex. May 28, 2015) (denying motion to protect plaintiff's information from discovery where, as here, "[p]laintiff has not provided argument and authority to show why the terms of the Court's standard protective order will not afford sufficient protection."). And with "AEO" protections, it is unclear how, as AnySignal asserts, this dispute is one over "CesiumAstro's efforts to learn AnySignal's confidential information without good cause." Motion at 1. Instead, the Motion represents AnySignal's attempts to obtain unfettered and unilateral authority to hide responsive and relevant messages.

In short, AnySignal cannot limit the scope of discovery provided by Luther, and has no argument that the texts between the two defendants are not critically relevant at this expedited discovery phase. Luther's production of these texts should not be limited or redacted. Instead, AnySignal's claimed confidentiality interest in its (unidentified) information can be served by an "AEO" designation under the Court's existing Confidentiality and Protective Order.

### V. CONCLUSION

For the foregoing reasons, AnySignal's Motion should be denied. Luther should be permitted to produce his communications with AnySignal.

Dated: June 14, 2024

Respectfully submitted,

O'MELVENY & MYERS LLP

*/s/ Kristin C. Cope*
David S. Almeling (*pro hac vice*)
dalmeling@omm.com
Two Embarcadero Center
28th Floor
San Francisco, California 94111
Telephone: +1 415 984 8700
Facsimile: +1 415 984 8701

Kristin C. Cope
kcope@omm.com
Patrick V. Plassio
Texas Bar No. 24102362
pplassio@omm.com
2801 North Harwood Street, Suite 1600
Dallas, Texas 75201
Telephone: +1 972 360 1900
Facsimile: +1 972 360 1901

**Attorneys for Plaintiff CesiumAstro, Inc.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on June 14, 2024.

> */s/ Kristin C. Cope*
> Kristin C. Cope